[Civ. No. 12737. First Dist., Div. Two. Feb. 23, 1945.]

ARTHUR WALLACE AITKEN, Respondent, v. GAINOR WILSON HAYWARD, Appellant.

J. Rainey Hancock for Appellant.

Richard V. Bressani and Robert E. Hayes for Respondent.

NOURSE, P. J.—This is an appeal from a judgment awarding respondent the sum of $1,557.43. The sole defense of appellant is that the action is barred by the statute of limitations. Respondent and appellant, brother and sister, were the beneficiaries under the will of their mother, Gainor G. Aitken, who died October 15, 1937, a resident of the county of Santa Clara, leaving an estate therein. This appellant was appointed executrix of said estate. The will contained a number of provisions which are material to an understanding of the circumstances of this case. These provisions are:

"Second: I give, bequeath and devise to my said daughter Gainor Wilson Hayward all of my jewelry and personal effects.

"Third: I give, bequeath and devise to my said daughter Gainor Wilson Hayward all claims, sums or indebtedness due to me from my son-in-law, Charles S. Hayward, including all promissory notes and deeds of trust.

"Fourth: I give, bequeath and devise all the remainder and residue of my estate to my said daughter, Gainor Wilson Hayward, and to my son, Arthur Wallace Aitken, in such proportion that the total value of the property given, bequeathed and devised and to be distributed to each, including the specific bequest contained in paragraph Second, shall be equal."

Under the equality provision just quoted, it became necessary, in order to determine the amount due the appellant, to ascertain the value of the jewelry and personal effects bequeathed by paragraph Second, and the value of the promissory notes, deeds of trusts and other indebtedness of Charles S. Hayward (the husband of the executrix) bequeathed by paragraph third. The promissory notes had been appraised at $3,600 at the time of the inventory, but their real value was not known.

To facilitate the winding up of the estate appellant, who resided in Los Gatos, caused to be prepared, and forwarded to respondent, then in New York, an agreement dated May 18, 1938, reading in part as follows:

"Whereas, it is not possible to make equal distribution without an agreement between the parties hereto, or a sale of the assets of said estate, owing to the fact that certain promissory notes of Charles S. Hayward are specifically bequeathed to said party of the first part, amounting in appraised value to $3600.00; and

"Whereas, said party of the first part is entitled to fees as such executrix of $779.42 and funds are not available in said estate to pay such fees; of which one-half thereof or $389.71 is properly chargeable to said party of the second part.

"Now, therefore, it is agreed by and between the parties hereto as follows, to-wit: the bequest of said personal effects and notes to said party of the first part, as set forth in paragraphs second and third of said will shall stand; the remainder of said estate shall be distributed to the parties hereto, share and share alike, the said party of the first part shall pay said party of the second part the sum of $1800 (less the said sum of $389.71, fees of executrix), or $1410.29 in all, such payment to be made at the time and in the manner and subject to such deductions for advances made by said party of the first part to take care of debts of said estate and costs of administration as may be mutually agreed upon, it being expressly understood that said estate may be distributed forthwith as herein provided; the adjustment between the parties hereto of such payment and advances to be made *at the convenience of the parties hereto* and not as a condition to immediate distribution of said estate as herein provided." (Italics ours.)

The $1,410.29 specified in the agreement was never paid

respondent, both parties apparently agreeing to wait until they were able to settle the entire amount.

According to respondent, who was the sole witness, it was not practicable to ascertain the exact amount or to agree on the method of payment at that time owing to the straitened financial condition of the executrix, and the fact that respondent, who was throughout all of this time a ship captain, was not available and his duties prevented him from giving the matter sufficient attention to work out a plan of payment.

In addition, respondent claims he made an overpayment of $147.14 of the sum he contributed for debts and expenses at the request of the executrix. The facts of the overpayment are not disputed.

It is true that when respondent was in California, he resided in one-half of a double house, the other half of which was the residence of his sister, the appellant. However, the testimony shows that until 1942, respondent had spent only a few days of each year in California, the first time, after the agreement, being in March, 1939. Until 1942, respondent was severely restricted by his duties since his ship was almost constantly engaged in transport through war zones. In March, 1942, respondent was wounded and was returned to California. He testified he was not fully conscious for a period of two months and was hospitalized approximately eight months. For most of the year he was thus incapacitated.

The first demand made upon appellant to adjust and pay the amount owing under the will and agreement was made in January, 1943. The court found that the action was not barred either by the statute of limitations or laches.

Appellant bases her appeal entirely upon the application of the four-year statute (Code Civ. Proc., §§ 337(1) and 337(2)). She contends the cause of action accrued on June 13, 1938, when the decree of distribution and final account were filed, since at that time the exact amount owing was ascertainable. The first demand was made in January, 1943, and this suit was filed February 17, 1943. The trial court found "That January 1943 was the first time when it was reasonable or convenient for the parties, and particularly the plaintiff, to discuss the matters set forth in said agreement or for plaintiff to request an adjustment or payment."

There is no question but that the contract contemplated that a demand be made by one or both of the parties

to institute further negotiations and that the time of performance under the contract was uncertain. As this court said in *Kaplan* v. *Reid Bros., Inc.,* 104 Cal.App. 268, 272 [285 P. 868]:

"In cases where a demand is necessary before a cause of action arises, the statute of limitations does not begin to run until the demand is made. The demand, however, must be made within a reasonable time and a time coincident with the period of the statute of limitations will ordinarily be deemed to be reasonable; but 'where delay in making the demand is expressly contemplated, even though the obligation is payable on demand, there is no rule of law that requires that demand shall be made within the statutory period for bringing an action.' (1 Wood on Limitations, 4th ed., sec. 118, p. 617; 37 Cor.Jur., pp. 966, 967; *Vickrey* v. *Maier,* 164 Cal. 384, 390, 391 [129 P. 273, 274].) In *Vickrey* v. *Maier,* the Supreme Court had under consideration a contract for the repurchase of stock 'at any time after six months' and held that a delay of more than four years in making a demand after the lapse of the six months' period was not unreasonable. In our case the delay was somewhat longer, but the question of what was a reasonable time was primarily a question to be decided by the trial court and we cannot hold that the trial court's determination, that the option was exercised within such time as to entitle respondent to recover under the contract, was erroneous." (See, also, *Neale* v. *Morrow,* 150 Cal. 414 [88 P. 815]; *Hughes* v. *Heffner,* 29 Cal.App.2d 382, 386 [84 P.2d 540]; *Woollomes* v. *Gomes,* 26 Cal.App.2d 461 [79 P.2d 728].)

In the case at bar the trial court was justified in finding that a delay was definitely contemplated in the contract. When the parties specified in their agreement that an adjustment be made at their "convenience" they were taking into consideration the peculiar nature of respondent's duties and the financial predicament of the appellant. The finding that under the facts a reasonable time and opportunity for adjustment did not occur until January, 1943, is supported by the evidence, and the conclusions of law that the action is therefore not barred by any provision of the statute of limitations properly followed.

Though appellant does not argue her defense of laches the adverse finding is fully supported by the same evidence, and

the trial court correctly held that this defense was not sustained.

The judgment is affirmed.

Goodell, J., and Dooling, J. pro tem., concurred.